UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Casey Lynn Jordan, | ) | Civil Action No.: 4:14-cv-03007-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Allstate Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Casey Lynn Jordan filed this first-party insurance bad faith action against her insurer Defendant Allstate Insurance Company. The matter is before the Court for resolution of three pending motions: a motion for a protective order filed by Plaintiff, a motion in limine to exclude evidence filed by Plaintiff, and a motion for summary judgment filed by Allstate. The Court held a hearing on May 27, 2016, and took all motions under advisement. For the reasons explained below, the Court grants Allstate's motion for summary judgment, dismisses this case with prejudice, and denies Plaintiff's motions as moot.

**Summary Judgment Standard**

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party

cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## Background

On June 4, 2010, Plaintiff suffered a left shoulder injury in an automobile accident when her car

was struck by a vehicle operated by Carlos Vincent Chinn, the at-fault driver.[1]  *See* Complaint, ECF No. 1-1, at ¶¶ 4-9.  At the time of the accident, Chinn maintained an insurance policy through United Auto Insurance Company with $25,000 in liability coverage, and Plaintiff maintained an insurance policy through Allstate with a total of $50,000 in underinsured motorist (UIM) coverage.  *Id.* at ¶¶ 10-11.

In May 2013, Plaintiff filed the underlying tort action in state court and served Allstate with a copy of the pleadings.  *Id.* at ¶ 12.  In December 2013, United tendered the $25,000 liability limits in exchange for a covenant not to execute.  *Id.* at ¶ 14.  Pursuant to section 38-77-160 of the South Carolina Code,[2] Plaintiff continued in the underlying action to recover UIM benefits claiming her damages exceeded $25,000, and Allstate assumed control of the defense of the action.  *Id.* at ¶¶ 13-14.

On January 3, 2014, Plaintiff sent Allstate written correspondence demanding that it settle her claim by tendering the entire $50,000 in UIM coverage.  *Id.* at ¶ 16.  This correspondence (1) noted the case was one of clear liability and that Plaintiff had suffered special damages totaling $33,457.38 ($29,785.38 in medical bills and $3,672 in lost wages); (2) required that Allstate notify Plaintiff in writing if it refused her demand; (3) notified Allstate that it owed Plaintiff duties of good faith and fair

---

[1]     The head-on collision occurred when Chinn crossed into the median and struck Plaintiff's car, which was stopped in the median about to make a left turn.  *Id.* at ¶ 7.  Chinn admitted in the ambulance on the way to the hospital that he had stopped taking his seizure medication several months earlier and blamed this for the accident.  *Id.* at ¶ 8.

[2]     The purpose of section 38-77-160 "is to provide coverage where the injured party's damages exceed the liability limits of the at-fault motorist."  *Cobb v. Benjamin*, 325 S.C. 573, 583, 482 S.E.2d 589, 594 (Ct. App. 1997).

> [T]he intent of § 38-77-160 is to protect an insurance carrier's right to contest its liability for underinsured benefits.  An insured must therefore preserve the right of action against an at-fault driver so long as the underinsured carrier has not agreed to the amount and payment of underinsured motorist benefits.  In the event the insured chooses to settle with the at-fault party's liability carrier, the underinsured carrier has the option to assume control of the defense of the action as provided in § 38-77-160.

*Williams v. Selective Ins. Co. of Se.*, 315 S.C. 532, 534-35, 446 S.E.2d 402, 404 (1994).

3

dealing, and that if Allstate refused her demand, she required documentation of its internal evaluation of her claim; and (4) requested a response to her demand by January 17, 2014. *Id.* at ¶¶ 16-18.

On January 15, 2014, Allstate's attorney contacted Plaintiff and asked if Allstate could proceed with the deposition of Dr. Earl B. McFadden (Plaintiff's orthopaedic surgeon) before having to respond to Plaintiff's settlement demand. *Id.* at ¶ 19. Plaintiff consented to this request. *Id.* On February 27, 2014, Allstate took Dr. McFadden's deposition and asked him about Plaintiff's alleged shoulder injury. *Id.* at ¶ 21. During the deposition, an issue arose regarding whether the shoulder injury resulted from the accident, so Dr. McFadden asked the parties to obtain the MRI of Plaintiff's left shoulder that had been taken shortly after the accident. *Id.* at ¶ 21.

Plaintiff obtained the MRI and provided it to Dr. McFadden, who then provided a written opinion stating the accident had proximately caused Plaintiff's shoulder injury. *Id.* at ¶ 23. On April 1, 2014, in light of Dr. McFadden's opinion, Plaintiff sent Allstate correspondence renewing all previous demands from her January 3 correspondence and noting her settlement demand ($50,000) "was slightly more than 2.5 times the specials in the case, a very reasonable figure given that the specific facts of her case . . . made for a strong punitive damages argument." *Id.* at ¶ 24. The April 1 correspondence noted mediation was upcoming and demanded that Allstate tender the full UIM benefits no later than April 15, 2014. *Id.*

On April 11, 2014, Allstate sent Plaintiff an email stating its "'adjuster ha[d] been out of the office'" and requesting a ten-day extension to respond to the April 1 demand. *Id.* at ¶ 25. Plaintiff consented to the extension. *Id.*

On April 23, 2014, Allstate sent Plaintiff an email responding to her April 1 demand and offering $15,000 of UIM benefits. *Id.* at ¶ 26. On April 25, 2014, Plaintiff refused Allstate's offer via

written correspondence, noting the $15,000 offer indicated Allstate valued Plaintiff's total claim as being worth $40,000 (the $25,000 credit Allstate would receive from Chinn's liability coverage plus Allstate's $15,000 offer of UIM benefits). *Id.* at ¶ 27. Plaintiff pointed out that she had provided Allstate documentation supporting her special damages of $33,457.38 and that those damages did not factor in her pain and suffering, stress and anxiety, other non-liquidated damages, and the punitive damages to which she was very likely entitled. *Id.* Plaintiff accused Allstate of offering significantly below its true evaluation of her claim and put Allstate on notice that its refusal to make a good faith offer would now result in prejudice to Plaintiff, who would have to incur the cost of mediation and preparation for trial (including depositions of Dr. McFadden and an eyewitness). *Id.* at ¶¶ 27-28.

On May 13, 2014, the parties mediated the case. ECF No. 53-3. The parties reached an impasse at mediation when Allstate's final offer of UIM coverage was $23,000 and Plaintiff's "bottom line" demand was $45,000 of the available $50,000 in UIM coverage.[3] *Id.* Thereafter, the case proceeded to trial in May 2014 and the jury awarded Plaintiff total damages of $62,500 ($55,000 in actual damages plus $7,500 in punitive damages). Compl. at ¶¶ 29. Allstate promptly paid Plaintiff the amount owed in UIM benefits—$37,500 (the amount of UIM benefits due after Chinn's tendered limits of $25,000 were subtracted from the $62,500 verdict). ECF No. 53-1 at 3. Therefore, the verdict did ***not*** exhaust the UIM coverage.

In June 2014, Plaintiff filed the current lawsuit in state court, alleging six causes of action: (1) breach of contract, (2) bad faith refusal to pay benefits, (3) bad faith in handling/adjusting a claim for insurance benefits, (4) negligent misrepresentation, (5) fraudulent misrepresentation, and (6) violation

---

[3]     According to Allstate's claim file notes from the mediation, Plaintiff initially maintained she would not accept anything less than the $50,000 policy limits but "after some negotiations" she lowered her demand to $45,000. ECF No. 53-3.

of the South Carolina Unfair Trade Practices Act.[4] Compl. at ¶¶ 31-67. In July 2014, Allstate removed the action to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. ECF No. 1. Plaintiff filed a motion for a protective order and a related motion in limine to exclude evidence. ECF No. 45. Allstate filed a motion for summary judgment. ECF No. 53. The Court held a hearing on May 27, 2016, and took all motions under advisement. ECF Nos. 60 & 62.

## Discussion

### I.     Allstate's Motion for Summary Judgment

Allstate has moved for summary judgment as to all six of Plaintiff's causes of action. *See* ECF No. 53-1. At the hearing in this matter, Plaintiff withdrew and abandoned her claims for negligent misrepresentation, fraudulent misrepresentation, and unfair trade practices. *See* ECF No. 62. Accordingly, she is proceeding solely on her three remaining causes of action: (1) breach of contract, (2) bad faith refusal to pay benefits, and (3) bad faith in handling/adjusting a claim for insurance benefits. *See* Compl. at ¶¶ 31-47. The Court first addresses Plaintiff's bad faith claims.

Under South Carolina law, an insurer that unreasonably refuses to settle a claim with an insured within policy limits is subject to liability in tort. *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 339, 306 S.E.2d 616, 618 (1983) (citing *Tyger River Pine Co. v. Maryland Cas. Co.*, 170 S.C. 286, 170 S.E. 346 (1933)). "[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action." *Id.* at 336, 340, 306 S.E.2d at 619. Because a bad faith action lies in tort and not in contract, a bad faith claim may exist even in the absence of any violation of an insurance contract provision. *Tadlock Painting Co. v. Maryland Cas. Co.*, 322 S.C. 498, 503, 473 S.E.2d 52, 55 (1996).

---

[4]     S.C. Code Ann. §§ 39-5-10 to -560 (1985 & Supp. 2015).

> The elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance are: (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

*Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359, 415 S.E.2d 393, 396-97 (1992).

In the present case, it is undisputed that Plaintiff and Allstate had a mutually binding insurance contract for UIM coverage, and that Allstate refused to pay Plaintiff the full $50,000 UIM benefits available under the contract. Thus, the Court need only consider the final two elements of Plaintiff's bad faith claims: (1) whether Allstate's refusal to pay the entire $50,000 in UIM benefits was the result of bad faith or unreasonable action on Allstate's part; and (2) whether Allstate's alleged bad faith caused damage to Plaintiff. As the Court will explain, Plaintiff cannot establish that her damages were proximately caused by Allstate's alleged bad faith, and Allstate is entitled to summary judgment on this basis.

Initially, the Court notes Plaintiff's complaint alleges two separate causes of action for bad faith, one for "bad faith refusal to pay benefits" and the other for "bad faith in handling/adjusting a claim for insurance benefits." *See* Compl. at ¶¶ 36-47. Plaintiff explains in her response in opposition to Allstate's motion for summary judgment that she "has specifically pled that Allstate handled and adjusted her claim in bad faith <u>outside</u> of the payment of any benefits, as evidenced by her complaint containing a *completely separate cause of action* for such conduct."[5]  ECF No. 56 at 5 (italicized

---

[5] Elsewhere in her response in opposition, Plaintiff states, "Yes, Jordan alleges that Allstate's refusal to pay benefits due by offering lower than a fair and good faith evaluation of her claim was bad faith. *See* Complaint, p. 8, ¶¶ 36-41. However, Jordan specifically pled an entirely separate cause of action for 'Bad Faith in Handling/Adjusting a Claim for Insurance Benefits.'" ECF No. 56 at 3.

7

emphasis added).

Allstate contends the *processing* of a claim for benefits necessarily relates to a *refusal to pay* benefits, and that as a matter of law, it did not act in bad faith in either refusing to pay UIM benefits or processing Plaintiff's claim. Allstate cites the elements of a cause of action for bad faith refusal to pay first party benefits under a contract of insurance set forth in *Crossley*, *supra*, and Allstate asserts, "This often-cited precedent makes it crystal clear that the bad faith 'handling' of the claim is but one element of the cause of action resulting in the 'refusal by the insurer to pay benefits due under the contract.' Plaintiff's effort to dissect the 'handling' aspect of the claim and create some separate and distinct cause of action based thereon is contrary to applicable law." Def.'s Reply, ECF No. 58 at 3.

In *Tadlock*, the South Carolina Supreme Court quoted its holding in *Nichols* "'that if an insured can demonstrate bad faith or unreasonable action by the insurer *in processing a claim* under their mutually binding insurance contract, he can recover consequential damages in a tort action.'" *Tadlock*, 322 S.C. at 500, 473 S.E.2d at 53 (quoting *Nichols*, 279 S.C. at 340, 306 S.E.2d at 619). Citing decisions from jurisdictions around the country, the court explained:

> [A]n insured is not only bargaining for security from financial loss, the primary goal motivating the purchase of insurance, when it enters into an insurance contract. Rather, "the insured also is entitled to receive the additional security of knowing that she will be dealt with fairly and in good faith. That security comes not from the express contractual terms, but from the implied covenant of good faith and fair dealing."

*Id.* at 501-02, 473 S.E.2d at 54 (emphasis removed) (quoting *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1269 (Ariz. 1992)). Significantly, in *Mixson, Inc. v. American Loyalty Insurance Co.*, the South Carolina Court of Appeals cited *Tadlock* and specified "the covenant of good faith and fair dealing extends not just to the payment of a legitimate claim, but also to the manner in which it is

processed." 349 S.C. 394, 400, 562 S.E.2d 659, 662 (Ct. App. 2002). *See also Ocean Winds Council of Co-Owners, Inc. v. Auto-Owners Ins. Co.*, 241 F. Supp. 2d 572, 576-77 (D.S.C. 2002) (discussing *Tadlock* and *Mixson*). However, it is not necessary to resolve the issue of whether there is a distinction between a claim for bad faith refusal to pay and one for bad faith processing/handling because Plaintiff's bad faith claims, regardless of whether they are separate or one cause of action, fail for another reason discussed below.

Additionally, Allstate argues its settlement offers in the underlying tort action were not unreasonable as a matter of law, and therefore Plaintiff cannot establish a genuine issue of material fact that it acted in bad faith in refusing to offer the full policy limits. ECF No. 53-1 at 6-13. Allstate maintains this case is simply a classic value dispute with negotiations made in good faith rather than an outright, unreasonable refusal to pay benefits, and that there was simply a difference in valuation between the parties. Allstate cites *Snyder v. State Farm Mutual Automobile Insurance Co.*, 586 F. Supp. 2d 453 (D.S.C. 2008), and *Collins v. Auto-Owners Ins. Co.*, 759 F. Supp. 2d 728, 730 (D.S.C. 2010), *aff'd*, 438 F. App'x 247 (4th Cir. 2011), for the proposition that this was just a case of a value dispute, not a case of bad faith.

In response, Plaintiff argues there is a genuine issue of material fact as to whether Allstate acted in bad faith, and she asserts the Court must consider Allstate's bad faith and unreasonable action in *processing* her claim. ECF No. 56-1 at 4-5. She devotes the majority of her argument to her expert witness's testimony that insurance adjusters have four main obligations—communication, investigation, evaluation, and settlement—and she claims Allstate failed to fulfill any of these obligations. *Id.* at 5-17.

"[O]nce a UIM insured commences a claim for liability against the allegedly at-fault driver, the UIM insurer has a duty to act in good faith towards the insured." *Snyder*, 586 F. Supp. 2d at 458 (citing

*Myers v. State Farm Mut. Auto. Ins. Co.*, 950 F. Supp. 148, 150 (D.S.C. 1997), and *Halmon v. Am. Int'l Grp. Ins. Co.*, 586 F. Supp. 2d 401, 408 (D.S.C. 2007)). "However, a duty to deal in good faith does not necessarily entail a duty to make a settlement offer," *id.*, and an insurer cannot be liable for bad faith if there exists an objectively reasonable basis for contesting a claim. *Crossley*, 307 S.C. at 360, 415 S.E.2d at 397; *see Collins*, 759 F. Supp. 2d at 741-42 (finding no bad faith where the value of the plaintiff's UIM claim "could reasonably be debated"). "By logical extension, if there is a reasonable ground for offering less than the full amount demanded on a claim, then there is no bad faith in negotiations."[6] *Collins*, 759 F. Supp. 2d at 740. "[T]he fact that the parties ha[ve] different estimations of the value of a claim is not, under South Carolina law, evidence of bad faith on the part of the party offering the lower amount." *Collins*, 438 F. App'x at 249.

In *Snyder v. State Farm*, the district court stated:

> The law certainly does not require every insured with UIM coverage who has initiated an action against an at-fault driver to receive a settlement offer for some money. The reality is that some claims would be frivolous, and insurers must have the ability to protect their own interests (and, by extension, the interests of their other premium-paying customers) by taking over the defense of the at-fault driver where the insured's claims are without merit.

586 F. Supp. 2d at 458-59. The district court cited *Myers v. State Farm*, which "held that if it was 'clear' that the insured suffered damages 'greatly in excess' of the liability limits of the at-fault party,

---

[6] The district court in *Snyder*, *supra*, explained:

> [I]t is not the role of the courts to impose rigid rules and guidelines upon the conduct of parties in the settlement process. Settlement negotiations are best served by as much flexibility as possible so long as the parties are negotiating in good faith, as this allows both parties to make proposals which are best suited to serve their particular needs. Artificial constraints or requirements placed upon the options available to the bargaining parties would generally only serve to frustrate attempts to reach a mutually agreeable settlement.

586 F. Supp. 2d at 460.

10

the insurer could not in bad faith delay or withhold benefits to which it was certain that the insured was entitled." *Snyder*, 586 F. Supp. 2d at 459 (quoting *Myers*, 950 F. Supp. at 151).

The instant lawsuit is a first-party UIM case, and *Snyder* and *Myers* addressed whether a UIM carrier "may have a duty to make a settlement offer prior to its insured obtaining a judgment against, or exhausting the policy limits of, the tortfeasor." *Myers*, 950 F. Supp. at 151; *see Snyder*, 586 F. Supp. 2d at 457-61. Allstate argues the verdict itself in the underlying case against Chinn indicates there was simply a difference in valuation (with Allstate being $14,500 too low and Plaintiff being $12,500 too high). Allstate contends this "judgment" in the underlying case can constitute "evidence that there was a reasonable basis to dispute exactly what this case was worth" and therefore establish there was no bad faith as a matter of law. *See Collins*, 759 F. Supp. 2d at 742.

"Whether an insurance company is liable for bad faith must be judged by the evidence before it at the time it denied the claim or if the insurance company did not specifically deny the claim by the evidence it had before it at the time the suit was filed." *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 448, 450 S.E.2d 582, 584 (1994). "Evidence that arises after the denial of the claim is not relevant to the propriety of the conduct of the insurer at the time of its refusal." *Id.*

Interestingly, in its opinion affirming the district court's grant of summary judgment in *Collins*, the United States Court of Appeals for the Fourth Circuit reviewed the record de novo and did *not* indicate it considered the verdict/judgment itself in deciding whether the insurer had a reasonable ground for contesting the insured's claim. *Collins*, 438 F. App'x at 249. After listing "[t]he elements of a bad faith refusal to pay a claim action" set forth in *Howard*, *supra*, the Fourth Circuit ruled as follows:

> We have reviewed the record, including the parties'

11

>correspondence and Auto-Owners' internal memoranda, and we cannot conclude, on these facts, that Auto-Owners acted in bad faith. It is clear that ***even before the jury's verdict in Collins v. Frasier***, Auto-Owners had legitimate reservations about the validity of Collins's claims. In contemporaneous memoranda and letters to Collins's attorney, Auto-Owners' attorneys and claims adjusters expressed their belief that ***Frasier had meritorious defenses to both liability and the extent of Collins's damages***. While Collins (and his attorney) clearly believed that Collins was entitled to more than the $100,000 offered by Auto-Owners, the fact that the parties had different estimations of the value of a claim is not, under South Carolina law, evidence of bad faith on the part of the party offering the lower amount.
>
>Collins argues, though, that because internal Auto-Owners documents suggest that at least one claims adjuster initially valued his claim at $150,000, Auto-Owners' $100,000 offer represented less than its own estimate of what the claim was worth, and was thus made in bad faith. We do not agree. "If there is reasonable ground for contesting a claim, there is no bad faith" even where the insurer makes no offer to settle. *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 458 (D.S.C. 2008) (citing *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 415 S.E.2d 393, 397 (1992)). Thus, because Auto-Owners had a reasonable ground for contesting the claim, and was not even obligated to make the initial $100,000 settlement offer, we cannot say it exercised bad faith in failing to make a higher offer.

*Id.* (emphases added). *See also Stewart v. State Farm Fire & Cas. Co.*, No. 2:11-CV-03020-DCN, 2013 WL 3206553, at *1, 3-4 (D.S.C. June 24, 2013) (granting the insurer's motion for summary judgment on the insured's claim for "bad faith resulting from the alleged mishandling of a [UIM] claim"; ruling "it was not clear that damages were suffered by [the plaintiff] in excess of the at[-]fault driver's liability policy limits" of $65,000 because "*[a]ll evidence* pointed to the contrary–that [the plaintiff]'s damages did not exceed $65,000"; and necessarily implying "[a]ll evidence" did *not* include the jury's verdict of $190,000 (emphasis added)).

Under *Howard*, as well as the appeal in *Collins*, South Carolina law appears to prohibit

consideration of the judgment/verdict (i.e., evidence arising *after* Allstate denied Plaintiff's demand for the entire amount of UIM coverage) in the underlying case as irrelevant. That is because evidence of the verdict amount was obviously not available to Allstate at the time it denied Plaintiff's demand for the entire amount of UIM coverage.

In any event, because of the unique facts of this case, the Court need not and does not decide whether Allstate's settlement offers were unreasonable or could reasonably be debated. As the Court explains below, Plaintiff's bad faith causes of action fail as a matter of law because she cannot establish her alleged damages were the proximate result of the alleged bad faith of Allstate.

Allstate also asserts the only damage alleged by Plaintiff is emotional distress associated with the trial of the underlying tort action, and contends emotional distress damages are not recoverable in a bad faith suit as a matter of law.[7] ECF No. 53-1 at 14-16. Existing case law, however, appears to support the principle that emotional distress damages are recoverable for a bad faith processing/handling claim *if there is sufficient evidence of such*.

In *State Farm Fire & Casualty Co. v. Barton*, the United States Court of Appeals for the Fourth Circuit implicitly recognized emotional distress damages alleged in an action for bad faith refusal to pay insurance proceeds brought under South Carolina law are recoverable when the emotional distress relates to the insurer's refusal to pay.[8] 897 F.2d 729, 732-33 (4th Cir. 1990) (applying South Carolina

---

[7]  Allstate asserts Plaintiff's sole proof of emotional distress damages is her deposition testimony that she was "stressed" by the underlying trial. ECF No. 53-1 at 15-16. In response, Plaintiff indicates she has not only alleged *non-economic* consequential damages (emotional distress caused by having to go to trial in the underlying case) but also *economic* consequential damages: the litigation costs she expended in going to trial. *See* ECF No. 56 at 17-20.

[8]  Allstate acknowledges the Fourth Circuit's *Barton* decision and the related cases of *Doe* and *University Medical Associates*, *infra*, but asks this Court to depart from precedent. ECF No. 53-1 at 15. This Court, however, is bound by the Fourth Circuit's interpretation of South Carolina law. Allstate has not presented, and the Court is unable to locate, any subsequent South Carolina state cases that cast doubt upon the Fourth Circuit's implicit holding in *Barton*.

13

law and ruling an insurer's refusal to pay benefits cannot render it liable for emotional distress unless the refusal to pay is the proximate cause of the distress). The Fourth Circuit's decision in *Barton* is consistent with the South Carolina Supreme Court's precedent that consequential damages[9] are available in an insurance bad faith case. *See, e.g.*, *Tadlock*, 322 S.C. at 504, 473 S.E.2d at 55; *Nichols*, 279 S.C. at 340, 306 S.E.2d at 619. Subsequent decisions within the District of South Carolina have adhered to the holding in *Barton* and likewise found emotional distress damages are available for a bad faith claim. *See Karnofsky v. Massachusetts Mut. Life Ins. Co.*, No. 2:14-CV-949-PMD, 2015 WL 8160793, at *6 (D.S.C. Dec. 7, 2015); *Doe v. Nw. Mut. Life Ins. Co.*, No. 2:10-CV-2961, 2012 WL 2405510, at *9 (D.S.C. June 26, 2012); *Shiftlet v. Allstate Ins. Co.*, 451 F. Supp. 2d 763, 773 (D.S.C. 2006); *Univ. Med. Associates of Med. Univ. of S.C. v. UnumProvident Corp.*, 335 F. Supp. 2d 702, 709 (D.S.C. 2004); *Wright v. UNUM Life Ins. Co.*, No. 2:99-2394-23, 2001 WL 34907077, at *11-12 (D.S.C. Aug. 31, 2001) ("South Carolina has not limited the rule in *Nichols*, and 'all consequential damages' includes damages for emotional distress . . . ." (quoting *Nichols*, 279 S.C. at 339-40, 306 S.E.2d at 618-19)).

Finally, Allstate argues that even if this Court rules emotional distress damages are recoverable, Plaintiff's alleged damages were not proximately caused by Allstate's alleged bad faith in either refusing to pay benefits or processing/handling her claim for UIM benefits, as under *no* circumstances would Plaintiff have accepted anything less than the $50,000 in total UIM coverage, which Plaintiff's verdict did not exceed. Allstate contends this case presents the unique situation where the insured's alleged damages were not, as a matter of law, proximately caused by the alleged bad faith of the insurer.

---

[9]     *See Barton*, 897 F.2d at 733 (referring to emotional distress damages as "non-economic consequential damages").

ECF No. 53-1 at 15-17. The Court agrees.

Damages are a critical element of a first-party insurance bad faith action. *See Crossley*, 307 S.C. at 359, 415 S.E.2d at 397. "An insured may recover damages for a bad faith denial of coverage if he or she proves there was no reasonable basis to support the insurer's decision to deny benefits under a mutually binding insurance contract." *Dowling v. Home Buyers Warranty Corp., II*, 303 S.C. 295, 297, 400 S.E.2d 143, 144 (1991).

At her deposition, Plaintiff testified she never would have accepted *any settlement amount for less than full policy limits* in the underlying action. *See* Pl.'s Dep., ECF No. 53-6 at 2-3, 5. Specifically, Plaintiff stated that if Allstate had offered her $37,500 at any time before the jury returned its verdict, she *still* would have declined that hypothetical offer and refused to accept anything less than the full $50,000 UIM policy limits. She testified as follows:

> Q: [Y]ou never would have accepted less than fifty thousand dollars.[10] You've told me that.
> A: Right.
> Q: Under any circumstances at any time?
> A: No, sir.
> Q: Is that true?
> A: That is true.
>
> . . . .
>
> Q: But you've already said that if they had offered you thirty-seven [thousand] five hundred dollars before the jury came back, you would not have taken it, right?
> A: No, sir.
> Q: You would never have taken that?
> A: No, sir.
> Q: So would you still have sued Allstate if they offered you

---

[10] The Court is cognizant of the fact that Plaintiff's "bottom line" demand at mediation was $45,000; this sum was still more than the $37,500 due from the UIM coverage based on the verdict.

>       thirty-seven thousand five hundred dollars?
> A:    I would have.
>
> . . . .
>
> Q:    Well, if they had offered you thirty-seven thousand five hundred dollars, you still would have gone through this anxiety, right, because you never would have taken that?
> A:    Right.

ECF No. 53-6 at 2-3, 5; *see also* ECF No. 56-9 at 4.

Based on the above testimony, the Court finds Plaintiff cannot establish the element of damages necessary to prove her bad faith claims, regardless of whether they are couched as "bad faith refusal to pay" or "bad faith handling/adjusting." *See* Compl. at ¶¶ 36-47. Even assuming arguendo that Allstate acted unreasonably or in bad faith,[11] Plaintiff cannot, as a matter of law, establish that her alleged damages were proximately caused by Allstate's alleged bad faith. A jury determined the precise amount of UIM benefits owed to Plaintiff were $37,500; Plaintiff did not obtain an excess verdict. Even if Allstate had offered this exact amount before trial, Plaintiff testified she would not have accepted it, would have still proceeded through trial in the underlying case, and would have incurred the same damages she now claims. Proximate cause for Plaintiff's alleged damages is lacking as a matter of law. Accordingly, the Court must grant summary judgment for Allstate on Plaintiff's bad faith claims.[12]

Allstate is likewise entitled to summary judgment on Plaintiff's breach of contract claim. ECF No. 53-1 at 4-6. "The elements for a breach of contract are the existence of the contract, its breach, and the damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 399 S.C. 483, 491, 732 S.E.2d

---

[11] Again, the Court reiterates it makes no finding regarding whether Allstate's settlement offers were reasonable or whether Allstate acted in bad faith.

[12] This is not a situation where Plaintiff testified she would have taken more than what was offered, but less than what the jury awarded. Instead, she specifically testified she would not have settled even for what the jury actually awarded.

205, 209 (Ct. App. 2012). "'The general rule is that for a breach of contract the defendant is liable for whatever damages follow as a natural consequence and a proximate result of such breach.'" *Id.* (quoting *Fuller v. E. Fire & Cas. Ins. Co.*, 240 S.C. 75, 89, 124 S.E.2d 602, 610 (1962)).

Just as she must prove damages for her bad faith claims, Plaintiff must prove damages for her breach of contract claim. Because Plaintiff cannot establish her damages were the proximate result of Allstate's alleged breach, as shown by her deposition testimony above, her breach of contract claim fails as a matter of law. Accordingly, the Court must grant summary judgment for Allstate on Plaintiff's breach of contract claim.

II.     **Plaintiff's Motion for a Protective Order and Motion in Limine to Exclude Evidence**

Plaintiff seeks protection from having to testify about matters related to mediation of the underlying state case, and she moves to exclude from evidence at trial any such matters that occurred at mediation. *See* ECF No. 45. Because the Court is granting Allstate's motion for summary judgment and dismissing this entire action, the Court denies Plaintiff's motions as moot.

## Conclusion

The Court must grant summary judgment for Allstate because Plaintiff cannot, as a matter of law, establish the damages element of her bad faith and breach of contract claims. The Court has thoroughly reviewed the entire record, including all pleadings, pending motions, briefs, and exhibits, and it has considered the law applicable to this case. For the reasons set forth above, the Court **GRANTS** Allstate's motion for summary judgment [ECF No. 53], **DISMISSES** this action *with prejudice*, and **DENIES AS MOOT** Plaintiff's motion for a protective order and motion in limine to exclude evidence [ECF No. 45].

**IT IS SO ORDERED.**

Florence, South Carolina                                    s/ R. Bryan Harwell
August 16, 2016                                             R. Bryan Harwell
                                                            United States District Judge